ACCEPTED
01-12-00264-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/17/2015 11:54:14 AM
CHRISTOPHER PRINE
CLERK

**NO. 01-12-00264-CV**

# In the
# First Court of Appeals
# Houston, Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
3/17/2015 11:54:14 AM
CHRISTOPHER A. PRINE
Clerk

**ETC MARKETING, LTD.,**

*Appellant,*

**v.**

**HARRIS COUNTY APPRAISAL DISTRICT,**

*Appellee.*

**BRIEF OF VALERO MARKETING & SUPPLY COMPANY
AS AMICUS CURIAE IN SUPPORT OF
MOTION FOR *EN BANC* RECONSIDERATION**

Reagan W. Simpson
State Bar No. 18404700
rsimpson@yettercoleman.com
Christian J. Ward
State Bar No. 24033434
cward@yettercoleman.com
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, Texas 77010
Telephone: (713) 632-8000
Facsimile:  (713) 632-8002

*Attorneys for Amicus Curiae*
*Valero Marketing & Supply Company*

# TABLE OF CONTENTS

**PAGE**

Index of Authorities ......................................................................3

Interest of Amicus Curiae ..............................................................5

Summary of the Argument................................................................6

Argument........................................................................................8

I. The Panel Should Never Have Reached The Constitutional Issue Because Texas State Law Forbids The Tax HCAD Seeks To Impose. ..........8

II. The Tax Fails The U.S. Supreme Court's Strict Scrutiny Test For Taxation Of Goods In Interstate Commerce. ...............................................10

III. The Panel's Ruling Has Significant Negative Consequences That Make Immediate Correction Essential. ........................................................12

Conclusion and Prayer ...............................................................14

Certificate of Compliance Under Appellate Rule 9.4...........................16

Disclosure Under Appellate Rule 11(c)..............................................16

Certificate of Service ...................................................................17

# INDEX OF AUTHORITIES

PAGE(S)

**Cases**

*Am. Trucking Ass'ns, Inc. v. Michigan Pub. Serv. Comm'n,*
545 U.S. 429 (2005)................................................................................12

*Barclays Bank PLC v. Franchise Tax Bd. of Cal.,*
512 U.S. 298 (1994)................................................................................10

*Complete Auto Transit, Inc. v. Brady,*
430 U.S. 274 (1977)................................................................................10

*Goldberg v. Sweet,*
488 U.S. 252 (1989)................................................................................11

*In re B.L.D.,*
113 S.W.3d 340 (Tex. 2003)......................................................................8

*Midland Cent. Appraisal Dist. v. BP Am. Prod. Co.,*
282 S.W.3d 215 (Tex. App.—Eastland 2009, pet. denied),
*cert. denied*, 131 S. Ct. 2097.............................................................. 10, 11

*Patterson-UTI Drilling Co. v. Webb Cnty. Appraisal Dist.,*
182 S.W.3d 14 (Tex. App.—San Antonio 2005, no pet.)...................................9

*Peoples Gas, Light, & Coke Co. v. Harrison Cent. Appraisal Dist.,*
270 S.W.3d 208 (Tex. App.—Texarkana 2008, pet. denied),
*cert. denied*, 131 S. Ct. 2097.............................................................. 10, 11

*Spector Motor Serv. v. McLaughlin,*
323 U.S. 101 (1944)..................................................................................8

*TracFone Wireless, Inc. v. Comm'n on State Emergency, Commc'ns,*
397 S.W.3d 173 (Tex. 2013)......................................................................9

**Statutes**

Tex. Tax Code §11.01(c)(1)..................................................................................9

Tex. Tax Code §21.02(a)(1)................................................................................9

## INTEREST OF AMICUS CURIAE

Amicus curiae Valero Marketing and Supply Company (Valero) is a subsidiary of Valero Energy Corporation and owns all inventories among Valero Energy Corporation's various subsidiaries.[1]  Valero has extensive inventories in interstate commerce.  Thus, Valero is directly affected by issues raised by this case and is also well-positioned to comment on the broader impact that the panel's ruling will have on industries including the petroleum industry if that ruling is permitted to stand.

As Valero knows, the panel's opinion threatens to impose heavy burdens on Texas business in general and the petroleum industry in particular, including administrative and financial burdens.  For example, it would be impossible to follow or track individual molecules of hydrocarbon inventories due to the nature of how crude and product are moved and traded while moving between sources of supplies and end-users.  And if Texas appraisal districts and other, out-of-state taxing jurisdictions all impose similar taxes on petroleum products in interstate commerce, companies like Valero will be injured by multiple taxation in a given year.

For reasons such as these, Valero has a strong interest in the outcome of ETC Marketing's motion for reconsideration, and writes in support of that motion.

---

[1] Valero is the source of the only fee for preparing this brief.  *See* Tex. R. App. P. 11(c).

## SUMMARY OF THE ARGUMENT

Amicus Valero urges the Court to reconsider this case *en banc*, vacate the panel's judgment, and issue a new opinion reversing the trial court because the panel majority erroneously reached and determined the constitutional issue in a way that has significant, detrimental ramifications for the Texas petroleum industry and Texas businesses and taxpayers in general.

The panel should never have reached the constitutional issue in the first place because, under Texas statutory law, HCAD has no power to impose the tax on ETC Marketing's natural gas stored temporarily in Harris County while traveling in interstate commerce. Both the U.S. and Texas Supreme Courts say that courts should not reach constitutional issues unnecessarily. The U.S. Supreme Court has, in particular, emphasized that in Commerce Clause taxation cases a court must first determine whether the state even intends to tax the relevant interstate activity. The majority's failure to heed that principle makes its imposition of a new, flawed constitutional rule all the more insupportable. Taxing statutes are strictly construed, and the relevant Texas statutes do not permit the tax HCAD seeks to impose on ETC.

In any event, the majority was wrong to conclude that the tax on ETC's natural gas satisfied any of the four prongs required to survive strict Commerce Clause scrutiny, let alone all four. For a tax to satisfy the test, it must meet all four

requirements: the activity taxed must have a substantial nexus to the taxing state, and the tax must be fairly apportioned, not discriminate against interstate commerce, and be fairly related to public services provided. The tax on ETC's natural gas meets none of those criteria because the gas was stored only temporarily while in interstate commerce, in a facility that is itself the beneficiary of any public services and on which the facility owner already pays ad valorem tax. The tax thus improperly sets up a financial barrier around Harris County and Texas.

The judgment permitting Harris County to impose an unconstitutional tax on ETC's natural gas has broad, dangerous consequences. In many practical ways, the panel's ruling threatens to irreparably injure the Texas petroleum industry, other Texas businesses and taxpayers, and Texas consumers. Beyond the fact that owners of natural gas and other petroleum products that pass through Harris County while in interstate commerce will be subject to the illegal tax, the door is now open to ad valorem taxation of all manner of goods in interstate commerce. The Court should close that door by granting reconsideration and vacating the panel's judgment.

**ARGUMENT**

**I.** **The Panel Should Never Have Reached The Constitutional Issue Because Texas State Law Forbids The Tax HCAD Seeks To Impose.**

The majority's damaging error in application of constitutional law is all the more troubling because this case should never have been decided on constitutional grounds in the first place. Texas statutory law does not permit the taxation HCAD seeks to impose here.

The United States Supreme Court has explained that, in general, courts should avoid making constitutional law when statutory law answers the relevant question, and specifically in cases involving the Commerce Clause and "the distribution of the taxing power as between the State and the Nation." *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944). When the question involves an alleged tax on interstate commerce, a court must first decide if the state intends for the tax to apply to one in the position of the putative taxpayer, "from what aspect of interstate business [the state] seeks an exaction," what subject matter the state seeks to tax, "and what is the calculus of the tax" sought. *Id.* at 104. "Every one of these questions must be answered before we reach the constitutional issues which divided the court below." *Id.* The Texas Supreme Court likewise "only decide[s] constitutional questions when [we] cannot resolve issues on nonconstitutional grounds." *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003).

In Texas, "[s]everal cardinal, century-old principles dictate strictness in tax matters." *TracFone Wireless, Inc. v. Comm'n on State Emergency Commc'ns*, 397 S.W.3d 173, 183 (Tex. 2013). In particular, "tax authorities cannot collect something that the law has not actually imposed." *Id.*

The law did not actually impose the tax on ETC's natural gas because the gas was not located in Texas for "longer than a temporary period," Tex. Tax Code §11.01(c)(1), and thus HCAD had no jurisdiction to impose a tax on it. The gas was only temporarily located in Harris County, before it was transported to out-of-state buyers. Additionally, the gas had no situs in Harris County because it was not located in the county on January 1 for "more than a temporary period" based on its owner's intent and the type of property. Tex. Tax Code §21.02(a)(1); *see, e.g.*, *Patterson-UTI Drilling Co. v. Webb Cnty. Appraisal Dist.*, 182 S.W.3d 14, 18 (Tex. App.—San Antonio 2005, no pet.).

The panel thus should have resolved this case in ETC's favor on the statutory ground that the tax is illegal under Texas law. The majority's erroneous constitutional holding will have far-reaching and detrimental consequences for Texas businesses and taxpayers—including, but certainly not limited to, those in the petroleum industry—and on interstate commerce. Those broad consequences illustrate the soundness of the principle against deciding constitutional issues unnecessarily. Because the majority disregarded that principle, its twofold error in

9

unnecessarily reaching out to decide the constitutional issue and then deciding it wrongly will have manifold ramifications.

**II.    The Tax Fails The U.S. Supreme Court's Strict Scrutiny Test For Taxation Of Goods In Interstate Commerce.**

Having erroneously reached the constitutional issue regarding the Commerce Clause, the majority then set a dangerous precedent in finding that HCAD's taxation of ETC's natural gas was constitutional.  To survive Commerce Clause scrutiny, a tax must satisfy all four prongs the U.S. Supreme Court laid out in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977).  The tax here satisfies none of those prongs, and the majority's holding otherwise opens the door for similarly unconstitutional taxation of other Texas businesses.

For a tax to survive strict Commerce Clause scrutiny, it must: (1) apply to an activity having a substantial nexus to the taxing state, (2) be fairly apportioned, (3) not discriminate against interstate commerce, ***and*** (4) be fairly related to the services the state provides.  *Barclays Bank PLC v. Franchise Tax Bd. of Cal.*, 512 U.S. 298, 310-11 (1994); *Complete Auto*, 430 U.S. at 279.  As the other two Texas courts of appeals that have considered similar facts held, a tax like the one HCAD seeks to impose fails that test.  *Peoples Gas, Light, & Coke Co. v. Harrison Cent. Appraisal Dist.*, 270 S.W.3d 208, 219 (Tex. App.—Texarkana 2008, pet. denied), *cert. denied*, 131 S. Ct. 2097; *Midland Cent. Appraisal Dist. v. BP Am. Prod. Co.*

10

282 S.W.3d 215, 224 (Tex. App.—Eastland 2009, pet. denied), *cert. denied*, 131 S. Ct. 2097.

The activity HCAD seeks to tax is ETC's receipt of natural gas that is only temporarily present in Harris County in the course of being transported in the interstate pipeline system. That activity has no "substantial nexus" to Texas. The only connection is the tenuous one that the gas is temporarily located in the local structure while passing through the interstate system. *See Peoples*, 270 S.W.3d at 218-19. Further, the origin and destination of the particular gas at issue cannot be reliably determined.

The tax is not fairly apportioned because it is not "internally and externally consistent." *Goldberg v. Sweet*, 488 U.S. 252, 260-61 (1989). It is internally inconsistent because if multiple taxing authorities were to impose the same ad valorem tax the taxes could be levied on any gas (or other products) temporarily stored within those jurisdictions while traveling in interstate commerce to their destination. *See Midland Cent.*, 282 S.W.3d at 224. It is externally inconsistent because the "portion of the revenues from the interstate activity" does not "reasonably reflect[] the in-state component of the activity being taxed." *Goldberg*, 488 U.S. at 262. There is no way—reasonable or otherwise—to determine if HCAD's multi-million dollar assessment actually relates to the

amount of the fungible natural gas temporarily located in Harris County at the relevant time.

The tax discriminates against interstate commerce because it "impose[s] burdens on interstate trade that are clearly excessive in relation to the putative local benefits" and has "the inevitable effect of threatening the free movement of commerce by placing a financial barrier around the State." *Am. Trucking Ass'ns, Inc. v. Michigan Pub. Serv. Comm'n*, 545 U.S. 429, 433 (2005) (internal quotation marks and alterations omitted). The tax places a financial barrier around both Harris County in particular and, to the extent natural gas and other products travel through Harris County while in interstate commerce, Texas as a whole. And the public services Harris County provides benefit the storage facility, rather than the gas that happens to be temporarily stored there, so the multi-million dollar tax imposed far exceeds any local benefits ETC receives.

Similarly, the tax is not fairly related to the services provided. Again, the public services benefit the storage facility itself, not the gas. And the facility owner already pays significant property taxes on the facility and the "cushion gas" it permanently stores there.

III. **The Panel's Ruling Has Significant Negative Consequences That Make Immediate Correction Essential.**

In short, the majority's holding permits the imposition of an unconstitutional tax in Harris County and the other nine counties within this Court's jurisdiction.

The threat to the free movement of petroleum products in interstate commerce is alone significant enough to warrant immediate correction, and the majority's disposition has broader ramifications affecting owners of all manner of property moving in interstate and foreign commerce.

As amicus Valero well knows, a company must take into account the risk of local taxation in making important business decisions. That is true even in the near term. Companies that, like Valero, currently have property in interstate commerce that passes through Harris County will be irreparably injured even if the Supreme Court ultimately corrects the panel majority's error. A company must pay the tax imposed pursuant to an adverse appraisal district decision each year, unless it files suit to challenge it, with the attendant litigation risk of doing so. The company must also, for example, make decisions about moving product elsewhere.

The petroleum industry needs predictability in the tax law it must follow. Before now, companies like Valero could rely on consistent decisions in cases like *Peoples* and *Midland Central Appraisal District v. BP America Production Co.* The panel's decision conflicts with those cases, and it will subject companies to a complex patchwork regime.

The illegal tax will increase the cost of oil and gas products to Texas consumers, including businesses, families, schools—anyone who uses fuel or other petroleum products. And the problem is not limited to petroleum products. If left

13

uncorrected, the majority opinion clears the way for ad valorem taxation of manufactured goods—any products—that pass through Harris or other counties while in interstate commerce.

The majority's judgment puts this Court's tax law into conflict with the Federal Constitution, state statutory law, and precedent of other Texas courts of appeals. And the unconstitutional tax policy it sanctions is bad for Texas business, taxpayers, and consumers.

## CONCLUSION AND PRAYER

For these reasons and those more fully addressed in ETC's motion for *en banc* reconsideration, amicus Valero urges the Court to grant the motion for *en banc* rehearing, vacate the panel's judgment, and issue a new opinion reversing the judgment of the trial court.

Respectfully submitted,


/s/ Reagan W. Simpson
Reagan W. Simpson
State Bar No. 18404700
rsimpson@yettercoleman.com
Christian J. Ward
State Bar No. 24033434
cward@yettercoleman.com
YETTER COLEMAN LLP
Two Houston Center
909 Fannin, Suite 3600
Houston, Texas  77010
Telephone:  713-632-8000
Facsimile:  713-632-8002

***Counsel for Amicus Curiae***
***Valero Marketing & Supply Company***

15

## CERTIFICATE OF COMPLIANCE UNDER APPELLATE RULE 9.4

I certify that this brief complies with the type-volume limitation of Texas Rule of Appellate Procedure 9.4(i)(2) because it contains 2,143 words, excluding the parts of the briefs exempted by Texas Rule of Appellate Procedure 9.4(i)(1).


/s/ Christian J. Ward
Christian J. Ward


## DISCLOSURE UNDER APPELLATE RULE 11(C)

Amicus curiae Valero is the source of the only fee for preparing this brief.

**CERTIFICATE OF SERVICE**

Pursuant to Tex. R. App. P. 9.5(e), I hereby certify that a true and correct copy of this brief has been served on lead counsel and additional counsel for all parties by electronic means on March 17, 2015, as follows:

Lynne Liberato
Lynne.Liberato@haynesboone.com
William Feldman
William.Feldman@haynesboone.com
HAYNES AND BOONE, LLP
1221 McKinney Street, Suite 2100
Houston, Texas 77010-2007
Telephone: (713) 547-2000
Telecopier (713) 547-2600

Robert J. Myers
RMyers@myerslawtexas.com
John J. Shaw
JShaw@myerslawtexas.com
MYERS ✯ LAW
2525 Ridgmar Blvd., Suite 150
Fort Worth, Texas 76116
Telephone: (817) 731-2500
Telecopier: (817) 731-2501

*Counsel for Appellant*
*ETC Marketing, Ltd.*

Mario L. Dell'Osso
mdellosso@olsonllp.com
Charles M. Williams
cwilliams@olsonllp.com
Sarah M. Morrow
smorrow@olsonllp.com
Eric C. Farrar
efarrar@olsonllp.com
OLSON & OLSON, L.L.P.
Wortham Tower, Suite 600
2727 Allen Parkway
Telephone: (713) 533-3800
Facsimile: (713) 533-3888

*Counsel for Appellee*
*Harris County Appraisal District*

/s/ Christian J. Ward
Christian J. Ward